Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/30/2016 09:09 AM CDT

- 297 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

K & H Hideaway, LLC, appellee, v.
Rodney M. Cheloha, appellant.
___ N.W.2d ___

Filed August 30, 2016.    No. A-15-275.

1. **Easements: Adverse Possession: Equity: Jurisdiction: Appeal and Error.** A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal to this court, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, the appellate court will consider that the trial court observed the witnesses and accepted one version of the facts over another.

2. **Easements: Adverse Possession: Proof.** A claim for prescriptive easement requires that all the elements of such adverse use be clearly, convincingly, and satisfactorily established.

3. **Easements: Words and Phrases.** An easement is an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.

4. **Easements.** A claimant may acquire an easement through prescription.

5. **Easements: Adverse Possession.** The use and enjoyment that will establish an easement through prescription are substantially the same in quality and characteristics as the adverse possession that will give title to real estate, but there are some differences between the two doctrines.

6. **Easements.** The law treats a claim of prescriptive right with disfavor. The reasons are obvious—to allow a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner. And further, a prescriptive easement essentially rewards a trespasser, and grants the trespasser the right to use another's land without compensation.

7. **Easements: Proof: Time.** A party claiming a prescriptive easement must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period.

- 298 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

8. **Easements: Adverse Possession: Words and Phrases.** The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be dependent upon a similar right in others.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. A use is continuous and uninterrupted if it is established that the easement was used whenever there was any necessity to do so and with such frequency that the owner of the servient estate would have been apprised of the right being claimed.

10. **Easements: Presumptions: Proof: Time.** Generally, once a claimant has shown open and notorious use over the 10-year prescriptive period, adverseness is presumed. At that point, the landowner must present evidence showing that the use was permissive.

11. **Easements: Presumptions.** When a claimant uses a neighbor's driveway or roadway without interfering with the owner's use or the driveway itself, the use is to be presumed permissive. Of course, this rule merely creates a presumption.

12. **Evidence: Appeal and Error.** When credible evidence is in conflict on material issues of fact, the appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

13. **Easements: Proof.** The party asserting a prescriptive right must also clearly establish the nature and scope of the easement.

14. **Easements.** The extent and nature of an easement are determined from the use made of the property during the prescriptive period.

15. \_\_\_\_. The law requires that the easement must be clearly definable and precisely measured.

Appeal from the District Court for Platte County: Robert R. Steinke, Judge. Affirmed.

David A. Domina, of Domina Law Group, P.C., L.L.O., and Mark M. Sipple, of Sipple, Hansen, Emerson, Schumacher & Klutman, for appellant.

George H. Moyer, of Moyer & Moyer, for appellee.

Inbody, Pirtle, and Riedmann, Judges.

Pirtle, Judge.

## INTRODUCTION

Rodney M. Cheloha appeals from an order of the district court for Platte County granting K & H Hideaway, LLC

(K&H), a prescriptive easement across Cheloha's property and enjoining Cheloha from interfering with K&H's use of the prescriptive easement. Based on the reasons that follow, we affirm.

BACKGROUND

In May 2013, K&H brought an action against Cheloha, Paul Donoghue, and Donoghue's wife, seeking the establishment of a prescriptive easement over a private road located on land owned by Cheloha. K&H also sought injunctive relief enjoining Cheloha from interfering with K&H's use of the easement. Trial was held on multiple days in 2014. A summary of the evidence is as follows:

In 2012, K&H acquired a 7-acre tract of land in Platte County, Nebraska. The triangular tract of land is bordered by the Loup River on the north. Cheloha owns property to the east and southeast of the 7-acre tract. Cheloha's parents owned the property prior to Cheloha. Donoghue owns property adjacent to and located south of the tract's southern boundary. There is a cabin located on K&H's property, and the property is primarily used for recreational purposes, although approximately 4 acres of the tract consists of a meadow that provides an annual hay crop.

K&H's property is landlocked and is not accessible by a public road. Until October 2012, the 7-acre tract was accessed by way of a private road extending north along the section line separating Cheloha's property on the east from the Donoghue property on the west. Although Donoghue and his deceased wife were originally named as defendants in this case, they were dismissed when it was determined that the disputed private road lies east of the section line and is located entirely on Cheloha's property.

Evidence was offered to show the historical ownership of the 7-acre tract. The property was owned by John Bredehoft as early as 1901 and was transferred to Theodore Bredehoft in 1945. It stayed in the Bredehoft family until 1986, when

- 300 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

it was conveyed to Robert Grimes. After his death in 2005, the property was inherited by Keith Grimes (Grimes). In February 2006, Grimes executed a warranty deed conveying the property to himself and his friend, Harlan Siefken, as joint tenants. Upon the death of Grimes in August 2009, Siefken, as surviving joint tenant, took ownership of the property. Siefken sold and conveyed title to the property to K&H by deed dated September 18, 2012.

As far back as the witnesses could remember—at least since 1956—the 7-acre tract was always accessed by way of the private road along the east side of the section line separating the Cheloha and Donoghue properties. The road was described as a fairly well maintained and graded gravel drive approximately 15 feet in width. The disputed road runs north, approximately 1,300 feet, to a drive that enters the K&H property. The disputed road extends further north beyond the K&H drive to a drive which extends on Cheloha's property.

The disputed road is well-defined and is bounded on the west by a boundary fence between the Cheloha and Donoghue properties. It is bounded on the east by rows of crops during the growing season, and an area with a Quonset and machine shed that has living quarters. As the disputed road extends north beyond the Quonset and machine shed, it is bounded on the east by a fence until it reaches the drive to the K&H property.

According to Donoghue, there had been a gate at the south end of the disputed road since 1956, preventing the general public from freely accessing it. Siefken testified that a gate with a padlock was there since at least 1977.

Until K&H acquired ownership of the 7-acre tract, its predecessors and the Cheloha family were on friendly terms. The Bredehofts and the Chelohas were friends, as well as the Donoghues. The Grimes family was also "neighborly" with the others. Grimes' father, although never an owner of the 7-acre tract, hunted and fished there often and was on friendly terms with everyone. Siefken also was on good terms

- 301 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

with the Chelohas. However, when K&H acquired owner-ship of the 7-acre tract, things changed. Cheloha became openly hostile to the members of K&H and Siefken, and he engaged in conduct making it difficult for them to access the 7-acre tract.

On October 4, 2012, Cheloha's attorney sent a letter to K&H's predecessor in title, Siefken, notifying him that access to the 7-acre tract would no longer be available by way of the road along the section line separating Cheloha's property from the Donoghue property, but, rather, access would be moved to an alternative route located on the east side of Cheloha's property. Cheloha testified that he did not want K&H using the disputed road because after it agreed to buy the property, the amount of traffic on the road significantly increased.

There was also evidence to indicate that Cheloha was upset when Siefken sold the property to K&H. Cheloha thought he would inherit the 7-acre tract from Grimes. There was evi-dence that Grimes made a will in which he left the property to Cheloha. However, when Grimes died, he and Siefken owned the property as joint tenants. Siefken gave Cheloha the opportunity to buy the property with K&H, but he declined. Cheloha also testified that in August 2012, he offered to buy the property from Siefken, but Siefken would not accept his offer.

Following trial, the court granted K&H "a private prescrip-tive easement along, over and upon the disputed road such as to enable it ingress and egress to its property, which prescrip-tive easement is identified and described in Ex. 30." The trial court also ordered that Cheloha was permanently enjoined from interfering with K&H's use of the prescriptive easement.

## ASSIGNMENTS OF ERROR

Cheloha assigns that the trial court erred in (1) employing a confused, incorrect standard of proof; (2) granting K&H a prescriptive easement and enjoining Cheloha from denying K&H use of the contested roadway; (3) misapplying binding

- 302 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

precedent, including *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012), and deciding the case incorrectly as a result; and (4) granting an easement without delineated usage terms and on terms so vague as to be unenforceable.

## STANDARD OF REVIEW

[1] A suit to confirm a prescriptive easement is one grounded in the equitable jurisdiction of the district court and, on appeal to this court, is reviewed de novo on the record, subject to the rule that where credible evidence is in conflict on material issues of fact, this court will consider that the trial court observed the witnesses and accepted one version of the facts over another. *Teadtke v. Havranek*, 279 Neb. 284, 777 N.W.2d 810 (2010).

## ANALYSIS

*Standard of Proof.*

We first address Cheloha's assignment that the trial court erred in "employ[ing] a confused, incorrect standard of proof." In its analysis, the trial court found that K&H "clearly, convincingly and satisfactorily" established the elements necessary to prove a prescriptive easement. In the factual background section of the trial court's order, it stated that "[t]he greater weight of the evidence demonstrates that Cheloha became angered when Siefken sold the property to [K&H]." Cheloha argues, based on the references above, that the court was confused about which standard of proof applied.

[2] A claim for prescriptive easement requires that all the elements of such adverse use be clearly, convincingly, and satisfactorily established. See *Fyfe v. Tabor Turnpost*, 22 Neb. App. 711, 860 N.W.2d 415 (2015). The court found that all the elements of prescriptive use were established by clear, convincing, and satisfactory evidence. Its use of the "greater weight of the evidence" language was used only in reference to the evidence about Cheloha's being angry about Siefken's selling the property. The court found the evidence

- 303 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

that Cheloha was angry when Siefken sold the property to be more credible than the evidence that he was not angry. The court was not applying "greater weight of the evidence" as a burden of proof. We find no merit to Cheloha's assignment of error that the court was confused or used an incorrect burden of proof.

*Prescriptive Easement and*
*Injunctive Relief.*

Cheloha next assigns that the trial court erred in granting K&H a prescriptive easement and enjoining Cheloha from denying K&H use of the contested roadway. Cheloha argues that K&H failed to prove the elements required for a prescriptive easement by clear and convincing evidence.

[3-5] An easement is "'[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose.'" *Feloney v. Baye*, 283 Neb. 972, 976, 815 N.W.2d 160, 164 (2012), quoting Black's Law Dictionary 585-86 (9th ed. 2009). Nebraska case law recognizes that a claimant may acquire an easement through prescription. *Feloney v. Baye, supra.* The use and enjoyment that will establish an easement through prescription are substantially the same in quality and characteristics as the adverse possession that will give title to real estate, but there are some differences between the two doctrines. *Id.*

[6] Nebraska case law has previously noted that the law treats a claim of prescriptive right with disfavor. *Feloney v. Baye, supra.* The reasons are obvious—to allow a person to acquire prescriptive rights over the lands of another is a harsh result for the burdened landowner. *Id.* And further, a prescriptive easement essentially rewards a trespasser, and grants the trespasser the right to use another's land without compensation. *Id.*

[7] In prescriptive easement cases, the Nebraska Supreme Court has held that a party claiming a prescriptive easement

- 304 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

must show that its use was exclusive, adverse, under a claim of right, continuous and uninterrupted, and open and notorious for the full 10-year prescriptive period. See *id.*

In order for K&H to prove a prescriptive easement, it had to establish each of the elements by clear, convincing, and satisfactory evidence. See *Fyfe v. Tabor Turnpost*, 22 Neb. App. 711, 860 N.W.2d 415 (2015).

[8] The word "exclusive" in reference to a prescriptive easement does not mean that there must be use only by one person, but, rather, means that the use cannot be dependent upon a similar right in others. *Teadtke v. Havranek*, 279 Neb. 284, 777 N.W.2d 810 (2010). There was no evidence that K&H's use of the property was dependent on a similar right in others.

[9] A use is continuous and uninterrupted if it is established that the easement was used whenever there was any necessity to do so and with such frequency that the owner of the servient estate would have been apprised of the right being claimed. *Fyfe v. Tabor Turnpost, supra*. There is no dispute that K&H and its predecessors have used the disputed road to access the 7-acre tract in a continuous and uninterrupted manner for far longer than the necessary 10-year prescriptive period. Since at least 1956, the Bredehoft family, the Grimes family, and thereafter Siefken used the disputed road openly and on a continuous and uninterrupted basis. Cheloha admits that K&H met the element requiring proof of continuous, uninterrupted use for 10 years by "tacking" the years of use by K&H's predecessors. Brief for appellant at 27. K&H's use of the road constitutes continuous and uninterrupted use for the prescriptive period, as well as open and notorious conduct, as the use was within plain view of Cheloha.

[10,11] Generally, once a claimant has shown open and notorious use over the 10-year prescriptive period, adverseness is presumed. *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). At that point, the landowner must present evidence showing that the use was permissive. *Id.* But this rule

- 305 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

is not without exceptions. In certain factual situations, the Nebraska Supreme Court has applied a presumption of permissiveness. *Id.* In *Feloney v. Baye, supra*, the court held that when a claimant uses a neighbor's driveway or roadway without interfering with the owner's use or the driveway itself, the use is to be presumed permissive. Of course, this rule merely creates a presumption. And a claimant can rebut the presumption by showing the claimant is making the claim as of right. *Id.*

Cheloha primarily argues that K&H's predecessors use of the road was permissive and that K&H did not present evidence to show the use was adverse and under a claim of right. He separately assigns that the trial court misapplied *Feloney v. Baye, supra*, and, as a result, incorrectly decided this case. Specifically, Cheloha argues that the court failed to apply the essential teaching of *Feloney*, i.e., that the elements of a prescriptive easement cannot be established where the use of one's property over the years has occurred permissively. He admits that the facts in *Feloney* are different from the facts in the present case, but contends that is not grounds for a legal distinction and the law in *Feloney* is applicable.

In *Feloney v. Baye, supra*, the plaintiff sought the establishment of a prescriptive easement on the defendant's driveway for ingress and egress. The parties' residences were separated by a narrow alley that left inadequate room for the plaintiff to negotiate a necessary sharp turn to access his garage without swinging across a portion of the defendant's driveway. The court affirmed the trial court's order granting summary judgment in favor of the defendant, albeit on a different presumption of permissiveness, finding that the plaintiff's use of the defendant's driveway was presumptively permissive and that the plaintiff did not present any evidence which would create a question of fact as to that question.

In the present case, the trial court set out the established principles of prescriptive easements as set forth in *Feloney v. Baye*, 283 Neb. 972, 815 N.W.2d 160 (2012). The trial

- 306 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

court also summarized the facts in *Feloney* and noted that the facts presented in *Feloney* are greatly dissimilar to the facts in the present case. However, it stated, "Assuming the rule of presumptive permissiveness announced in *Feloney* is equally applicable to rural and urban property, the question becomes whether [K&H] offered sufficient evidence to rebut it." Following its conclusion that the elements for a prescriptive easement were met, the court found that any presumption of permissiveness was rebutted by K&H. Thus, the court applied the holding in *Feloney*, but came to a different conclusion based on the facts and evidence presented. We conclude there is no merit to Cheloha's assignment that the trial court misapplied *Feloney* in deciding this case.

We further agree with the trial court that K&H, unlike the plaintiff in the *Feloney* case, presented evidence to show that its use of the disputed road was under a claim of right, which was sufficient to overcome the presumption of permissiveness. For decades, and at the very least since Donoghue's father moved to his property in 1956, the 7-acre tract was always accessed by using the disputed road. The disputed road provided the only means of access from the public road to the 7-acre tract. The Bredehoft family, the Grimes family, and Siefken all used the road without any dispute, and with the knowledge and acquiescence of Cheloha or his father. The evidence shows that permission to use the road was never sought from Cheloha and that permission was never given. Siefken testified that he never asked Cheloha or his father for permission to use the road.

[12] Access to the road was gated and locked. This was to prevent the general public from accessing the property. There was testimony from different witnesses about various locks that were on the gate and where they originated from. In particular, there was conflicting evidence about the source of a distinctive heart-shaped brass padlock. Siefken testified that Grimes put the lock on, whereas Cheloha testified that the power company placed the lock there and had an easement to

- 307 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

transmission lines on the property. The trial court determined that it could be circumstantially inferred that the padlock came from the Grimes family. The specific type of lock was used by a public power company on its substations and gates in the 1930's and 1940's. Grimes' father was chief of stores for the power company and had access to the locks. When credible evidence is in conflict on material issues of fact, the appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Homestead Estates Homeowners Assn. v. Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009). We give such deference to the trial court here and conclude that the Grimes family provided the heart-shaped lock to secure the gate and provided a key to Cheloha's father.

After Siefken acquired sole ownership of the 7-acre tract in 2009, he changed the lock and placed a combination lock on the gate. He did this with Cheloha's knowledge, and both he and Cheloha knew the combination to the lock.

There was also evidence in regard to the maintenance of the disputed road. The Cheloha family primarily maintained the road, but there was evidence that Siefken and Grimes helped maintain the road over the years. Siefken testified that although the Cheloha family always graded the road, he and Grimes hauled rock and filled potholes about six or seven times. Further, after a flood damaged the road in the spring of 2007, Grimes sent Cheloha a check for $300 to help pay for expenses incurred in repairing the road.

Siefken testified that before Cheloha began building a structure on his land next to the road, he asked Siefken and Grimes if he could tear down the road a bit, and Siefken and Grimes gave him permission. Cheloha's request for permission to alter the road indicates that Cheloha acknowledged that Siefken and Grimes possessed an interest in the road. Siefken also testified that after Cheloha tore down the road, he and Grimes hauled gravel to the site to repair it. Cheloha admitted this was true.

- 308 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

The evidence also shows that Cheloha became upset when Siefken sold the property to K&H. Cheloha thought he would inherit the 7-acre tract from Grimes. There was evidence that Grimes made a will in which he left the property to Cheloha, but Siefken and Grimes owned the property as joint tenants at the time of Grimes' death. Although Siefken offered to let Cheloha buy the property with K&H, Cheloha declined. After the property was sold to K&H, use of the disputed road to access the property became a contested matter. After the conflict between K&H and Cheloha arose, Cheloha informed K&H that he did not have to provide it anything but a "goat path" to access the property. As the trial court found, if K&H and its predecessors in title had no right to use the disputed road, and if its use was completely permissive, then providing it an alternative route, even a "goat path," would have been unnecessary. Cheloha's belief that he had to provide K&H some way to access its property shows an acknowledgment that K&H and its predecessors had an interest in the disputed road.

In summary, the disputed road has been gated and locked as far back as witnesses could remember. For years, the gate was secured by a lock provided by the Grimes family and later changed to a combination lock provided by Siefken. Siefken and Grimes also helped maintain the road over the years. This evidence, along with the continuous use of the road by K&H's predecessors without seeking permission, made the Chelohas aware of K&H's claimed right to use the road to access its property. Cheloha acknowledged this claim of right when he asked Siefken's and Grimes' permission to tear down the road and when he told K&H that all he had to provide it was a "goat path" to access the property.

We conclude that K&H has shown by clear and convincing evidence that its use of the road at issue was exclusive, adverse, under the claim of right, continuous and uninterrupted, and open and notorious for the required 10-year prescriptive period. Therefore, K&H met its burden to establish a prescriptive easement.

- 309 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

*Granting Easement Without*
*Delineated Usage Terms.*

Finally, Cheloha assigns that the trial court erred in granting an easement without delineated usage terms and on terms so vague as to be unenforceable. The court granted K&H "a private prescriptive easement along, over and upon the disputed road such as to enable it full ingress and egress to and from its property, which prescriptive easement is identified and described in Ex. 30." Exhibit 30 is a topographic survey of the road in question and of the surrounding property. Cheloha does not contend that the legal description adopted by the court is deficient. Rather, Cheloha contends that the court should have defined the scope and extent of the easement in regard to terms of usage. He contends that the court left to speculation, guess, and conjecture when, how often, and for what purposes K&H could use the easement.

[13-15] In addition to satisfying the necessary requirements to establish a prescriptive easement, the party asserting a prescriptive right must also clearly establish the nature and scope of the easement. *Fyfe v. Tabor Turnpost*, 22 Neb. App. 711, 860 N.W.2d 415 (2015). The extent and nature of an easement are determined from the use made of the property during the prescriptive period. *Id.* The law requires that the easement must be clearly definable and precisely measured. *Id.*

Cheloha argues that the court failed to define the nature and scope of the easement. He also contends that there is insufficient evidence to define the easement scope because the evidence of use prior to K&H's ownership was permissive and limited to occasional use, which is different from the "parade of four-wheelers, river toys, campers, and traffic that K&H invited to its riverside parcel." Brief for appellant at 33.

The trial court granted K&H an easement "to enable it full ingress and egress to and from its property." Although this may seem vague, it is clear that K&H is allowed to use the road to access its property, regardless of the purpose. The property historically has been used for recreational purposes,

- 310 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
K & H HIDEAWAY v. CHELOHA
Cite as 24 Neb. App. 297

but also has a meadow that provides an annual hay crop. The extent and nature of an easement are determined from the use made of the property during the prescriptive period. *Fyfe v. Tabor Turnpost, supra.* Thus, the easement gives K&H use of the road to drive vehicles, campers, four-wheelers, and other vehicles to its property, as well as to get equipment to the property necessary to harvest the hay crop. We find no merit to Cheloha's final assignment of error.

## CONCLUSION

We conclude that the trial court did not err in granting K&H a prescriptive easement across Cheloha's property or in enjoining Cheloha from interfering with K&H's use of the prescriptive easement. The judgment of the trial court is affirmed.

Affirmed.